UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

SARAH L. FLANNERY,

        Plaintiff,

                                    Case No. 04-10144-BC
v.                                            Hon.  David M. Lawson

TRI-STATE DIVISION, COCA-COLA
ENTERPRISES, INCORPORATED,
COCA-COLA BOTTLING COMPANY OF
MT. PLEASANT, and COCA-COLA
ENTERPRISES COMPANY,

        Defendants.
_____/

## ORDER VACATING MAGISTRATE JUDGE'S ORDER DENYING DEFENDANTS' MOTION TO STAY PROCEEDINGS AND COMPEL ARBITRATION, AND SCHEDULING CASE MANAGEMENT AND SCHEDULING CONFERENCE

This matter is before the Court on the plaintiff's objections to the magistrate judge's order staying proceedings and granting the defendant's motion to compel arbitration. The plaintiff filed an action against her former employer in the Isabella County, Michigan circuit court alleging various violations of Michigan's Elliot-Larsen Civil Rights Act, Mich. Comp. Laws §37.2101, *et seq.*, based on claims of sexual discrimination and hostile work environment. Defendant Coca-Cola Enterprises Company removed the action to this Court alleging diversity of citizenship and then filed a motion to stay proceedings and compel arbitration. The Court referred the motion to Magistrate Judge Charles E. Binder, who entered an order on October 26, 2004 granting the motion. The plaintiff filed timely objections. After considering the motion *de novo*, the Court believes it should be denied without prejudice.

I.

A magistrate judge may be delegated authority "to hear and determine any pretrial matter pending before the court, except" motions for injunctive relief and certain enumerated dispositive motions. 28 U.S.C. § 636(b)(1)(A). The Court may reconsider any pretrial matter "where it has been shown that the magistrate judge's order is clearly erroneous or contrary to law." *Ibid.* Dispositive matters may be referred to a magistrate judge for a report and recommendation, which the Court reviews *de novo*. 28 U.S.C. § 636(b)(1)(B), (C).

The defendant asserts that the magistrate judge's order is a nondispositive order that should be reviewed for clear error. *See* Fed. R. Civ. P. 72(a). However, the effect of the magistrate judge's order is to terminate the litigation in this Court and transfer the case to another forum for a determination of the merits. When choosing the appropriate standard of review for a magistrate judge's decisions, the Sixth Circuit "does not limit dispositive orders to those enumerated in § 636(b)(1)(A)." *Vogel v. U.S. Office Products Co*, 258 F.3d 509, 517 (6th Cir. 2001). Rather, that court has adopted "a functional equivalency test to see if a particular motion has the same practical effect as a recognized dispositive motion." *Ibid.* The court in *Vogel* held that an order of remand should be reviewed as a dispositive order, much the same as a dismissal order: "The practical effect of remand orders and orders to dismiss can be the same; in both, cases are permitted to proceed in state rather than federal court." *Ibid.*

Likewise, an order compelling arbitration has the practical effect of allowing the case to proceed in a different forum. Therefore, the Court views the order compelling arbitration as a dispositive order that should be reviewed *de novo*. 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b).

II.

It does not appear that the plaintiff was working with the benefit of a written contract or other documentation concerning the terms and conditions of her employment. In any event, there was no agreement in existence to arbitrate disputes between the parties up to the time of the plaintiff's discharge.

The plaintiff alleges in her complaint that when she was fired on January 26, 2004, the defendants presented her with a "separation agreement" and told her that she had to sign it in order to receive her "separation payment," which amounted to a little more than $6,000. Upon termination, the defendants took the plaintiff's company vehicle, keys and files, and she was sent home in a taxi. She was given three days to sign the document. However, the "separation payment," she contends, consisted of money that she had already earned and to which she was entitled. Consequently, she asserts that the agreement is void because it was signed under duress.

The separation agreement contained a statement that the plaintiff was terminated "by resignation," discussed separation payments and compensation for vacation pay, reviewed employee benefits, and included a general release and confidentiality provisions. The agreement also contained an arbitration clause that states:

> 14. ARBITRATION. Any and all disputes arising regarding the interpretation, enforcement, or performance of this Agreement shall be resolved by binding, confidential arbitration governed by the Arbitration Rules established by the American Arbitration Association. The arbitrator shall have full authority to enforce the Agreement, including injunctive or other equitable relief.

Compl. Ex. A.

The magistrate judge believed that the motion was governed by *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395 (1967), in which the Supreme Court interpreted sections 2, 3 and

4 of the Federal Arbitration Act (FAA), 9 U.S.C. §§ 2, 3, 4. In that case, the parties had bought and sold a business. One of the sale documents was a consulting agreement that contained a non-compete clause and an arbitration agreement. Shortly after the deal closed, the buyer (Prima Paint) learned that the seller filed for bankruptcy protection, and Prima Paint then brought suit claiming fraud in the inducement: it alleged that it signed the contract on the basis of representations that the defendant was solvent and able to perform its contractual obligations, when in fact it was not. Prima Paint also sought to avoid the arbitration agreement. The Court held that the matter must be arbitrated because the fraud allegation was not directed specifically to the arbitration clause but to the contract generally.

> [I]f the claim is fraud in the inducement of the arbitration clause itself – an issue which goes to the "making" of the agreement to arbitrate – the federal court may proceed to adjudicate it. But the statutory language does not permit the federal court to consider claims of fraud in the inducement of the contract generally. . . . We hold, therefore, that in passing upon a § 3 application for a stay while the parties arbitrate, a federal court may consider only issues relating to the making and performance of the agreement to arbitrate.
>
> . . .
>
> In the present case no claim has been advanced by Prima Paint that F&C [the seller] fraudulently induced it to enter into the agreement to arbitrate "any controversy or claim arising out of or relating to this Agreement, or the breach thereof." This contractual language is easily broad enough to encompass Prima Paint's claim that both execution and acceleration of the consulting agreement itself were procured by fraud. . . . The question which Prima Paint requested the District Court to adjudicate preliminarily to allowing arbitration to proceed is one not intended by Congress to delay the granting of a § 3 stay.

*Prima Paint*, 388 U.S. at 403-04, 406.

The magistrate judge determined that the plaintiff's challenge was directed to the entire separation agreement, and since it did not focus solely on the arbitration clause, the arbitrator must decide the duress claim. The magistrate judge also rejected the plaintiff's arguments that the Federal

Arbitration Act was not applicable because the employment relationship did not involve interstate commerce.

The plaintiff wisely does not advance the latter argument again in her objections. However, she contends that *Prima Paint* does not bar her challenge to the separation agreement because it is void and may be attacked on the basis of conventional contract defenses, which must be decided by the Court, not the arbitrator.

### III.

The Supreme Court's decision in *Circuit City Stores v. Adams*, 532 U.S. 105 (2001), leaves little doubt that the Federal Arbitration Act applies to disputes arising from the employer-employee relationship, including those claims based on federal anti-discrimination laws. *Id.* at 122-23 (upholding arbitration clause in employment agreement and stating that "[t]he Court has been quite specific in holding that arbitration agreements can be enforced under the FAA without contravening the policies of congressional enactments giving employees specific protection against discrimination prohibited by federal law"). The Act provides:

> A written provision in any maritime transaction or a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

When enacting the FAA, Congress sought "to place arbitration agreements upon the same footing as other contracts." *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991). However, arbitration agreements are not given special status, nor are they immune from traditional contract defenses. The Supreme Court explained in *Prima Paint*:

> As the "saving clause" in § 2 indicates, the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so. To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract – a situation inconsistent with the "saving clause."

*Prima Paint*, 388 U.S. at 404 n.12.

The FAA presupposes that the employer and employee have entered into a valid arbitration agreement. *See Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 311-12 (6th Cir. 2000) (noting that "[i]f the statutory claim is not exempt from mandatory arbitration, we next consider whether the parties have executed a valid arbitration agreement and, if so, whether the statutory claim falls within the scope of that agreement"). Determining whether an arbitration agreement is valid requires application of the state's contract law as would any other contractual obligation. *Id.* at 314. Thus, in this case, the arbitration agreement must comply with Michigan law with respect to the formation of a contract. Because the common law principles of contract formation apply to determine the validity of the arbitration agreement, that agreement is similarly subject to the same common law defenses to a contract. *See Cooper v. MRM Inv. Co.* 367 F.3d 493, 498 (6th Cir. 2004).

The plaintiff contends that the entire separation agreement, including the arbitration clause, is void because it was procured by duress, and therefore the arbitration agreement cannot be enforced. The defendants contend that the plaintiff cannot make that argument because *Prima Paint* precludes it. But the Court does not believe that *Prima Paint* can be read so broadly.

The Sixth Circuit considered the scope of *Prima Paint* in *CBS Employees Federal Credit Union v. Donaldson, Lufkin and Jenrette Securities Corp.*, 912 F.2d 1563 (6th Cir. 1990), when it determined whether a fraud-based challenge to a securities margin agreement, which contained an arbitration clause, should be decided by the court or an arbitrator. The court held that if the claim

-6-

of fraud "relates to" the arbitration agreement, it is for the court to decide. *Id.* at 1566. However, "[i]f the arbitration clause is not at issue, then the arbitrator will decide challenges to the contract containing the arbitration clause." *Id.* at 1567. In that case, the plaintiff alleged that the arbitration clause was used to further the fraudulent scheme and was unenforceable. The court agreed because the challenge was leveled at the entire agreement including the arbitration clause. The court explained:

> The Court in *Prima Paint* found its holding consistent with the decision in *Moseley v. Electronic Facilities*, 374 U.S. 167, 83 S. Ct. 1815, 10 L. Ed. 2d 818 (1963), and with the statutory purpose of the Arbitration Act – to make arbitration agreements as enforceable as other contracts. 388 U.S. at 404 n.12. In *Moseley*, the Court held that where a plaintiff's pleading attacks the contract in general, as well as the arbitration clause contained therein, the allegation of fraud as to the arbitration clause should be decided by the district court.

*Id.* at 1568.

That concept was developed further by the court of appeals in *Burden v. Check into Cash of Kentucky, LLC*, 267 F.3d 483 (6th Cir. 2001). In that case, the plaintiffs challenged certain loan agreements as invalid under Kentucky usury and lending laws. They argued that the agreements were "void" because of the statutory violations, and therefore the arbitration clauses contained therein were not enforceable. The court rejected that argument because it focused on the substance of the contract itself, rather than whether the contract ever came into existence. However, the court acknowledged that a challenge to the existence of a contract based on traditional defenses such as capacity, authority to contract, and the like (and distinguished from a challenge to the substance of the contract) served to pose a challenge to the arbitration clause contained therein. The court stated:

> We note that this Court in *CBS Employees*, in not wanting to confound the dispositive question, may in fact have begged the dispositive question. That is, it is not clear that citation to *Prima Paint*, without more, answers the void *ab initio* question, inasmuch as *Prima Paint* failed to address the void *ab initio* question.

> Indeed, if anything, we are inclined to find that *Prima Paint* supports, rather than prohibits, excluding nonexistent contracts from the severability doctrine, because an allegation of a void contract raises exactly the same question as an allegation of a fraudulently induced arbitration agreement: whether the arbitrator has any power at all. *Cf. Prima Paint*, 388 U.S. at 404 n.12 ("To immunize an arbitration agreement from judicial challenge on the ground of fraud in the inducement would be to elevate it over other forms of contract"). The Seventh Circuit recently captured the point in four words: "No contract, no power." *Sphere Drake Ins.*, 256 F.3d at 591.

267 F.3d at 489.

The court further explained that "courts have addressed questions of void *ab initio* contracts as questions of signatory power, not contract content." *Id*. at 489. The court noted that questions of signatory power implicated the consent of the parties to the contract. *Ibid*. Quoting *Three Valleys Municipal Water District v. E.F. Hutton & Co.*, 925 F.2d 1136 (9th Cir. 1991), the *Burden* court warned:

> A contrary rule would lead to untenable results. Party A could forge party B's name to a contract and compel party B to arbitrate the question of the genuineness of its signature. Similarly, any citizen of Los Angeles could sign a contract on behalf of the city and Los Angeles would be required to submit to an arbitrator the question whether it was bound to the contract, even if its charter prevented it from engaging in any arbitration.

267 F.3d at 490 (quoting *Three Valleys*, 925 F.2d at 1140) (internal quotations omitted). Challenges to the very existence of a contract, therefore, necessarily "relate to" the validity of the embedded arbitration clause.

In this case, the plaintiff contends that the separation agreement is invalid because of duress, coercion, and unconscionability. The unconscionability claim alone would be decided by an arbitrator under the prevailing authority because it goes to the substance of the agreement, and therefore it would fall within the prohibition of *Prima Paint* and *Burden*. The unconscionability argument does not undermine the existence of the contract or address matters of contract formation.

-8-

The duress argument, however, is different in character because it questions whether the contract ever came into existence, and therefore whether the arbitrator could derive power from the clause contained in it. When a contract is challenged on the basis that no agreement was ever made, that alleged defect infects the entire agreement. The question whether certain provisions can be severed and saved is not presented because the challenge must be resolved irrespective of the terms of the agreement. The plaintiff here contends that no contract was ever formed because the plaintiff was under duress and did not freely assent to enter into the separation agreement or *any* of its provisions.

A contract made under duress can be ratified at a later time, and therefore it is voidable. *See* Calamari & Perillo, The Law of Contracts § 9.8 (4th ed. 1998). Duress can render a contract void, however, in "highly unusual circumstances." *Ibid*. In Michigan, duress can be personal or economic, the later occurring "when one is compelled to submit to an illegal exaction in order to obtain them from one who has them in possession but refuses to surrender them unless the exaction is submitted to." *Hackley v. Headley*, 45 Mich. 569, 574, 8 N.W. 511, 513 (1881), *cited in Rory v. Cont'l Ins. Co.*, 473 Mich. 457, 470 n.23, 703 N.W.2d 23 (2005). *See also Stefanac v. Cranbrook Educational Community*, 435 Mich. 155, 194 n.40, 458 N.W.2d 56, 74 n.40 (1990) (noting, in a dissent, that "the law in Michigan may have lagged behind" other states in recognizing economic duress). Under that definition, withholding wages or other money earned by the plaintiff in order to exact a signature on the separation agreement could constitute duress that undermines the formation of the contract.

The Court finds that the plaintiff's claim of duress challenges the existence of the contract itself, and therefore relates to all the clauses and provisions in it, including the arbitration clause. The argument that the arbitration clause is invalid and unenforceable, therefore, is not barred by the

rule in *Prima Paint*. To the extent that the magistrate judge's order said that it is, the order will be vacated.

An arbitration clause is invalid if "the evidence presented is such that a reasonable finder of fact could conclude that no valid agreement to arbitrate exists." *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). A genuine issue exists as to whether the plaintiff signed the agreement under duress. The defendants' motion must be denied at this time until the fact issue is resolved.

IV.

After a *de novo* review of the magistrate judge's order, the Court concludes that it cannot stand. The plaintiff's argument that the separation agreement and the arbitration clause contained in it are void because the agreement was signed under duress is not barred by the rule in *Prima Paint*.

Accordingly, it is **ORDERED** that magistrate judge's order granting the defendants' motion to stay proceedings and compel arbitration is **VACATED**.

It is further **ORDERED** that the defendants' motion to stay proceedings and compel arbitration [dkt # 7] is **DENIED** without prejudice. The defendants may renew the motion if discovery establishes no genuine issue of material fact and the defendants are entitled to a judgment as a matter of law on the claim of duress.

It is further **ORDERED** that the parties shall appear for a case management scheduling conference on **January 18, 2006 at 3:00pm**. Counsel for the parties shall prepare and serve on opposing counsel and the Judge's chambers, **ONE WEEK PRIOR TO THE CONFERENCE**, a

short statement (DOUBLE SPACED), *which shall not be filed with the Clerk's office or electronically filed*, which:

- Summarizes the background of the action and the principal factual and legal issues;
- Outlines the proposed discovery;
- Describes any outstanding or anticipated discovery disputes, and the basis you have for any objection;
- Discloses insurance available to satisfy part or all of a judgment, including indemnification agreements; and
- Proposes an appropriate management plan, including a schedule setting discovery cut-off and trial dates.

Counsel are encouraged to discuss their statements prior to the Status and Scheduling Conference. If counsel have met pursuant to Fed. R. Civ. P. 26(f), the proposed discovery plan may be submitted in lieu of these statements, supplemented as necessary to provide the above information.

Please be prepared to discuss the following at the Scheduling Conference:

A. The issues and narrowing the issues;
B. Subject matter jurisdiction;
C. Relationship to other cases;
D. Necessity of amendments to pleadings, additional parties, third-party complaints, etc.;
E. Settlement, including alternative dispute resolution;
F. Progress of discovery (counsel are instructed to commence significant discovery prior to the conference);
G. Issues which may appropriately be resolved by motion; and
H. Estimated trial length.

**Counsel are directed to discuss with their clients case evaluation (formerly "mediation") and the prospect of obtaining authority to stipulate to be bound by the provisions of Mich. Ct. R. 2.403, including the section dealing with sanctions.** Counsel are advised to bring their calendars for the scheduling of dates.

**IT IS THE RESPONSIBILITY OF PLAINTIFF TO NOTIFY ALL COUNSEL KNOWN AND NOT LISTED ON THE DOCKET SHEET AS HAVING APPEARED IN THE CASE OF THIS STATUS AND SCHEDULING CONFERENCE.**

Dated: December 2, 2005        s/David M. Lawson
                               DAVID M. LAWSON
                               United States District Judge

---

**PROOF OF SERVICE**

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on December 2, 2005.

                    s/Tracy A. Jacobs
                    TRACY A. JACOBS

---